IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 11, 2011

**ORLANDO M. REAMES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2006-D-3069     Cheryl Blackburn, Judge**

_____

**No.  M2010-00267-CCA-R3-PC - Filed March 8, 2011**

_____

Pursuant to a plea agreement, the Petitioner, Orlando M. Reames, entered an "open" guilty plea to one count of aggravated assault, a Class C felony, and the State dismissed one count of failure to appear, a Class E felony. See Tenn. Code Ann. §§ 39-13-102(e)(1), -16-609(e). The trial court sentenced the Petitioner to twelve years as a Range III, persistent offender. The Petitioner filed a timely petition for post-conviction relief and, after a hearing, the post-conviction court denied relief.  In this appeal, the Petitioner argues that Trial Counsel was ineffective because he failed to adequately prepare for the Petitioner's trial, resulting in the Petitioner feeling coerced to accept the State's plea offer.  After our review, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

J. Chase Gober, Nashville, Tennessee, for the appellant Orlando M. Reames.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

On Friday, August 10, 2007, the trial court held a hearing regarding Trial Counsel's request to continue the Petitioner's trial, which was scheduled to commence the following Monday, August 13, 2007.  At that time, Trial Counsel informed the trial court that, the night before, the Petitioner just told him about several potential witnesses.  Trial Counsel admitted

that, prior to the day before, he had not spoken to his client since the beginning of May. When the trial court reminded him that the court held a status conference on July 13, 2007, and that the Petitioner was present, Trial Counsel stated that he did not speak to his client that day. Additionally, the Petitioner told the trial court that he thought Trial Counsel was not prepared to represent him. The trial court denied Trial Counsel's motion for a continuance and told him that he should work over the weekend to prepare for the Petitioner's trial.

On August 13, 2007, the Petitioner entered an "open" guilty plea to one count of aggravated assault, and the State dismissed one count of failure to appear pursuant to the plea agreement. The Petitioner stated that he talked with Trial Counsel over the weekend and that they had thoroughly reviewed his case. He also said that he was satisfied with the work Trial Counsel had done. The trial court asked Trial Counsel if he had an opportunity to contact the witness he had mentioned in court on Friday, and he replied, "Judge, we've discussed that and decided not to pursue that route." The Petitioner replied in the affirmative when the trial court asked him in open court, "So you have thoroughly discussed that with [Trial Counsel], correct?"

The State summarized the underlying facts of the aggravated assault count as follows:

> Your Honor, in this case, 2006-D-3069, against [the Petitioner], if that had gone to trial, the State's proof would be that on July the 15th, 2006, the victim, Mr. William [Adkinson] was in the area of 684 Rolynn Drive. He owed [the Petitioner] $10 for some crack cocaine he had purchased a few weeks earlier, and [the Petitioner] that day wanted his money. At that time Mr. A[d]kinson didn't have it. A physical struggle ensued between the two of them, and at some point [the Petitioner] produced a gun and shot Mr. A[d]kinson in the thigh. This was here in Davidson County.

The Petitioner replied in the affirmative when asked if the facts the State recited were generally true. The trial court accepted the Petitioner's guilty plea, finding it was voluntary and factually based.

On January 23, 2008, the trial court sentenced the Petitioner as a Range III, persistent offender to serve twelve years in the Department of Correction. The Petitioner timely filed a petition for post-conviction relief asserting, among other claims, that because Trial Counsel was not prepared for his trial, the Petitioner felt that he had no other choice but to accept a plea agreement. On May 11, 2009 and June 1, 2009, the post-conviction court conducted a hearing regarding the Petitioner's request for relief.

William Adkinson, the victim, first testified that there was another person at the scene when he was shot and that he was not sure whether it was the Petitioner or the third party that shot him. However, upon cross-examination, Mr. Adkinson admitted that a man named Larice Davis coerced him to "drop the case" against the Petitioner and that his previous testimony during the post-conviction hearing had been untruthful. He admitted that his testimony at the Petitioner's preliminary hearing, in which he said that the Petitioner was the one who shot him, was true.

The Petitioner testified that, between his indictment in November 2006 and May 3, 2007, he only met with Trial Counsel once—while he was in court in April 2007. He said that, at that time, Trial Counsel never asked him about any witnesses who were present the night of the shooting. The Petitioner testified that Trial Counsel did not inform him that his case was set for trial on August 13, 2007, until August 9, 2007, when Trial Counsel came to visit the Petitioner in jail. The Petitioner said that he was shocked by the news and recalled, "I told him we weren't prepared to go to trial, he ain't done nothing concerning my case."

The Petitioner said that he told Trial Counsel about three witnesses—Larice Davis, Freddie Roper, and a woman named Liz. The Petitioner testified that he knew where Mr. Roper could be found because he was also incarcerated. Regarding the other two witnesses, he recalled that he did not know their exact addresses but that he "could point to the vicinity." The Petitioner claimed that Mr. Davis "knew I wasn't the man that shot [the victim]." He explained that "Liz" drove the vehicle that the Petitioner rode in the night of the shooting and that Mr. Roper "was a witness."

The Petitioner testified that Trial Counsel came to see him the Friday, Saturday, and Sunday before trial. He said that Trial Counsel and a private investigator said that they would contact the witnesses, but to his knowledge they never did. He recalled that Trial Counsel "kept telling me that I'm going to get found guilty," and he decided to plead guilty instead of having a trial. When asked why he answered "yes" to all of the questions the trial court asked him during his plea hearing, the Petitioner explained, "I knew I had to answer them questions to take the plea. I couldn't say no and still take the plea." The Petitioner further testified that he felt it was in his best interest "to take this plea at the time considering I was being forced to go to court with an unprepared attorney."

Trial Counsel testified that he had been licensed to practice law in Tennessee since 2003. He testified that he was first appointed to represent the Petitioner in general sessions court and that he conducted the preliminary hearing in this case. When asked if he informed the Petitioner that a trial date had been set, Trial Counsel said, "I'm not for certain, but I think I did." Regarding why he did not meet with his client between May 2007 and August 9, 2007, Trial Counsel explained as follows:

Because based on my previous conversations with [the Petitioner] and having conducted the preliminary hearing I felt fairly confid[e]nt about the facts of the case, what I was dealing with, and what I would have to present if I went to trial. At the time I don't recall that I had any notice of any witnesses. And if I did, I didn't have any way to—it was just general names. There wasn't any specific information as far as addresses, telephone numbers, or anything like that.

Trial Counsel testified that, the weekend before the trial, he worked diligently on the Petitioner's case and even hired a private investigator to help him. Regarding the potential witnesses, he recalled that he interviewed Mr. Roper and did not find him credible. He also said that, although he did not physically locate Mr. Davis, he believed that Mr. Davis would not be a credible witness because of his criminal record. Regarding "Liz," he explained, "[T]hat's all I had was a lady named Liz."

Trial Counsel testified that, the weekend before the trial was scheduled, he discussed the facts of the case with the Petitioner, as well as the implication of his criminal record. Trial Counsel recalled that, after their discussions, the Petitioner "may have said he didn't have any other options" beside to plead guilty. Trial Counsel testified that he was ready to proceed with a trial on August 13, 2007, if that was what the Petitioner wanted. He explained as follows:

It wasn't a complex case. It was an agg[ravated] assault case. It's not like I had three or four co-defendants trying to figure out what they're doing. I had one defendant, I had one victim. It was a situation where [the Petitioner] was alleged to have shot the victim over a bad drug deal. It wasn't a complicated case.

Scott Wilder, the attorney who represented the Petitioner for his sentencing hearing, testified that he spoke to a woman named Liz Scott during the course of his investigation of the Petitioner's case. However, according to Mr. Wilder, "she was not a very helpful witness as far as testimony" because she said it was dark, and she did not see what happened.

The post-conviction court denied the Petitioner's request for relief. This appeal followed.

**Analysis**

The Petitioner asserts that the post-conviction court erred when it found the Petitioner was not denied effective assistance of counsel. Specifically, he argues that Trial Counsel's

failure to adequately prepare for the trial resulted in him feeling coerced to accept the State's plea offer.

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. To demonstrate prejudice, a defendant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

Even if it is assumed that Trial Counsel was deficient for failing to investigate and prepare for the Petitioner's trial, the Petitioner has failed to prove prejudice by clear and convincing evidence. Although the Petitioner testified that he told Trial Counsel about three witnesses that could be helpful in his defense—Mr. Roper, "Liz," and Mr. Davis—he failed to present testimony from any of them at his post-conviction hearing. In Black v. State, this Court stated, "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); see also Owens v. State, 13 S.W.3d 742, 756 (Tenn. Crim. App. 1999) ("[P]roof of deficient representation by omission requires more than a speculative showing of a lost potential benefit."). Also, we note that Mr. Wilder testified that he interviewed Liz Scott and found that she was not a helpful witness because she did not see what happened. Thus, we agree with the post-conviction court that the Petitioner failed to meet his burden of proving by clear and convincing evidence that he was prejudiced by Trial Counsel's alleged deficient performance.

Finally, to the extent that the Petitioner is arguing that his guilty plea was not voluntary because he felt coerced to accept the State's offer due to Trial Counsel's lack of preparation, we conclude that this argument lacks merit.

In order to pass constitutional muster, a guilty plea must be voluntarily, understandingly, and intelligently entered. See Boykin v. Alabama, 395 U.S. 238, 243 n.5 (1969); Brady v. United States, 397 U.S. 742, 747 n.4 (1970). To ensure that a guilty plea is so entered, a trial court must "canvass[] the matter with the accused to make sure he [or she] has a full understanding of what the plea connotes and of its consequence[s]." Boykin, 395 U.S. at 244.

The trial court extensively questioned the Petitioner when he entered his guilty plea and found that his plea was entered voluntarily. The trial court even asked the Petitioner about the concerns he previously raised about Trial Counsel's lack of preparation, and the Petitioner said that the two had worked out their differences. During the post-conviction hearing, when asked why he answered "yes" to all of the questions the trial court asked him at his plea hearing, the Petitioner explained, "I knew I had to answer them questions to take the plea. I couldn't say no and still take the plea." Further, the Petitioner testified as follows when he was questioned by the post-conviction court about his plea:

> [Post-Conviction Court]: . . . So why not go on to trial? Why not just go on to trial?
>
> [The Petitioner]: I feel at the time—I wish I could have—what is the plea where you take a best interest plea or—that's what I was willing to take. I didn't feel like—I wasn't taking a plea because I was guilty. I was taking it because it was my best option at the time.
>
> [Post-Conviction Court]: Okay. So you preferred to do the plea as opposed to going to trial.
>
> [The Petitioner]: Let me tell you what I understood. Okay. I have a six[-year sentence] already. [The Assistant District Attorney] made it clear that if I go to trial and lose he [sic] going to take me to trial on this failure to appear. So not only could I end up with a fifteen and possibly another four or six, I could end up with a six, a fifteen, and something else for this failure to appear. So the only incentive—the only incentive I had was to take this plea and he [sic] dismiss this other one. But now I don't have three charges, three different sentences. I have two. That's the only incentive I had. So me knowing I'm fixing to get found guilty because I don't have no defense, no

-7-

witnesses, no nothing, my lawyer has done nothing, I had to do what I had to do for me that made sense to me. And it wasn't going to trial and getting two more sentences. I felt like I'm going to take this right here, I'm going to go in here and throw myself on the mercy of the [c]ourt and hope you give me the low end of it. And I maybe could come back on appeal and prove what I'm trying to do today, that my lawyer was ineffective. I didn't want to have three different sentences. I knew what was going on in spite of [Trial Counsel]. I knew what was going on. I was prepared.

Upon reviewing the record, we conclude that the Petitioner entered into his plea voluntarily, understandingly, and intelligently and that he had a full understanding of his plea and its consequences. The Petitioner is not entitled to relief on this issue.

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the denial of post-conviction relief.

_____
DAVID H. WELLES, JUDGE